**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LATORIA J. WYATT,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | **CASE NO.:** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AUSTAL USA, LLC.** | ) | **JURY DEMAND** |
| | ) | |
| **DEFENDANT.** | ) | |

## COMPLAINT

## I. JURISDICTION

This is a suit authorized and instituted pursuant to the Americans with Disabilities Act ("ADA"), and the Americans with Disabilities Act Amendments Act ("ADAAA"). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights secured by the ADA/ADAAA providing injunctive and other relief against discrimination based on disability and retaliation in employment.

## II. PARTIES

1. Plaintiff, Latoria J. Wyatt, hereinafter "Wyatt" or "Plaintiff" is a female citizen of the United States and is a resident of Mobile, Alabama.

2. Defendant, Austal USA, LLC hereinafter "Austal" or "Defendant", is a domestic limited liability company doing business in the state of Alabama. At all times relevant to this action, Defendant has maintained and operated a business in Alabama. Defendant is engaged in an industry affecting commerce and have fifteen (15) or more employees and are employers within the meaning of 42 U.S.C. § 2000e(b)(g) and (h).

## III. ADMINISTRATIVE PROCEDURES

3. Plaintiff brings this action for the unlawful employment practices and acts of intentional discrimination and retaliation that occurred at the Defendant's worksite located in Mobile, Alabama.

4. This action seeks to redress unlawful employment practices resulting from the acts of Defendant, its agents, servants, and employees committed with respect to Plaintiff's employment; and for a permanent injunction restraining Defendant from maintaining a habit and practice of discriminating against the Plaintiff on account of disability and retaliation.

5. On February 28, 2025 within 180 days of the last discriminatory act of which Plaintiff complains, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC"). (Doc 1-1, Exhibit A).

6. On May 27, 2026 Plaintiff's Notice of Right to Sue was issued by the EEOC to Plaintiff and Plaintiff is filing suit within the requisite ninety (90) days.

7. All administrative prerequisites for filing suit have been satisfied, and Plaintiff is entitled to bring this action.

## IV. FACTS

8. Wyatt is a 38-year-old female.

9. Wyatt began working for Austal as a welder in January 2020 at its' Mobile, AL facility.

10. In 2022, Wyatt was diagnosed with uterine fibroids. Uterine fibroids are muscle tumors of the uterus.

11. Wyatt's disability substantially limits her major life activities of lifting, standing, and walking.

12. Uterine fibroids cause Wyatt severe pain that is worsened by stress and strenuous activity.

13. On October 8th and 10th 2024, per advice of her physician, Wyatt requested reasonable accommodations from Austal. The accommodation request consisted of: day shift only, being restricted from lifting, pushing, pulling, or dragging more than 50 pounds. These accommodations would alleviate pelvic pain from her uterine fibroids.

14. Austal directed Wyatt to submit her request to UNUM – Austal's insurance carrier.

15. On October 25, 2024, Wyatt received a letter from UNUM, stating that

Austal approved her day shift only accommodation.

16. On October 28, 2024, Wyatt received a call from Austal HR Business Partner, Monica Oakley ("Oakley"), informing her that all of Wyatt's requested accommodations were approved by Austal.

17. When Wyatt was moved to day shift, she was assigned to work "the web and automated steel panel line." Her new supervisor on this line was Terry Burks ("Burks").

18. Wyatt's first day on day shift was November 4, 2024. Upon arrival to her new line, she was provided with equipment that exceeded her 50-pound weight restriction accommodation by approximately 40 pounds.

19. Wyatt called Oakley to inform her that Burks refused to accommodate her.

20. Additionally, Wyatt asked Burks if she could perform her work on sawhorse stands. Burks denied her request.

21. A few hours later, Colton Burns ("Burns") an Austal HR Employee, gave Wyatt a letter dated October 28, 2024, stating Austal approved her accommodations and that she was receiving her accommodations. Burns requested that Wyatt affirm the contents of this letter by signing it. Wyatt did not sign the letter because she had not been accommodated for her weight-related accommodations.

22. Wyatt was being forced to go against her weight restrictions and had to

lift, push, pull, or drag equipment which weighed far heavier than 50 lbs.

23. At the end of her shift that day on November 4, 2024, Wyatt sent Oakley an email describing how she had not been accommodated throughout the day. Wyatt expressed her concern to Oakley that she was not being accommodated despite being approved for accommodations. Oakley never responded to this email.

24. On November 5, 2024, during her work shift, for a second time, Wyatt told Burks of her accommodations and that she was not being accommodated. However, Burks refused to accommodate Wyatt. After her shift ended, she sent written complaints to Austal's Human Resources Department for Burk's failure to accommodate her medical restrictions.

25. On November 6, 2024, for a third time, Burks failed to accommodate Wyatt. Again, at the end of her shift, Wyatt sent a written complaint to HR telling Austal she was not being accommodated. Wyatt never received any response from her written complaints of November 5 - 6, 2024.

26. On November 14, 2024, Burks damaged piece of equipment and attempted to blame Wyatt. Burks threatened to issue Wyatt a write-up.

27. On November 20, 2024, Wyatt took leave that was approved by Austal. Again, Burks threatened to write-up Wyatt.

28. Wyatt complained in writing to HR about both of Burks' threats. Austal gave no response to Wyatt concerning these complaints.

29. On November 21, 2024, Wyatt called UNUM to report that she was not being accommodated.

30. On December 10, 2024, Burns called Wyatt into the HR office. Burns gave Wyatt a letter identical to the one she was given on November 4, 2024. Burns demanded that Wyatt sign the letter. Wyatt refused to sign the letter because she was not being properly accommodated by Austal. Oakley — present via Zoom — told Wyatt if she refused to sign the letter stating Austal was providing her proper accommodations, she would be: 1) be fired immediately; 2) be escorted from Austal property; and 3) security was on its way to escort her off the premises. Convinced she had no other option, Wyatt signed the letter and added "Under Protest, 8:47 A.M. 12/10/24."

31. On December 11, 2024, Burks, along with Jesus Soto ("Soto"), approached Wyatt saying he was not aware that Wyatt had accommodations and he would accommodate her. However, even after this statement by Soto, Wyatt was forced to push, pull, drag, or lift equipment that was well beyond the 50lb restriction from her medical provider.

32. On January 7 – 10, 2025 Wyatt was off work due to illness and took company provided sick leave before returning to work on January 13, 2025.

33. On January 13, 2025, around 1:00 p.m., Wyatt was written up by Burks. The write-up alleged that Wyatt placed her legs twice inside of an operational piece

of machinery, the "panel-line." Wyatt emphatically denied that she improperly placed her legs into the machines. Wyatt called Charlie Staten ("Staten"), HR Representative, over to witness her write-up.

34. Wyatt asked Burks, "What should I have done differently?" Burks responded, "just lay down on the panel line instead" and "not use your knees."

35. Later that day, at the end of Wyatt's shift, Burks accosted Wyatt by cornering her against a piece of welding equipment, shoving her phone in her face. He forced Wyatt to read text messages on her phone between he and his supervisor, Scott Tanner ("Tanner") referencing Wyatt, while berating and harassing her.

36. The following morning on January 14, 2025, before Wyatt's shift, she emailed Staten and Burns detailing the physical encounter and harassment from Burks the day before. Wyatt listed fellow co-worker, Curtis Stewart ("Stewart"), as a witness to the event.

37. Wyatt received no written response. When arriving at work for her shift at 5:30 a.m. on January 14, 2025, Wyatt was stopped by Tanner, told they were "going to have a meeting." Tanner instructed Wyatt to wait in the break room before the meeting took place. Wyatt would spend the next six hours waiting for someone from Austal to bring her into a meeting.

38. Around 11:00 a.m. Oakley and Bridget Jewett ("Jewett") enter the break room and tell Wyatt that she was being placed on leave until Austal could find

somewhere to put her.

39. On January 16, 2025, Wyatt received a call from Oakley telling her she was being fired. Oakley told Wyatt that her leave had become "indefinite" and Austal "could no longer accommodate" her. Additionally, Oakley told Wyatt she was being fired for the alleged safety violation and write-up from January 13, 2025.

40. Shortly after the call with Oakley ended, Wyatt received two separate letters via email. One letter stated, "Unfortunately, we therefore have no reasonable option but to administratively separate your employment effective the date of this letter. The second letter, states that on January 13, 2025, "you were observed violating Austal's safety protocols by placing your legs inside an operational piece of machinery." "After this serious safety violation, you were given a verbal warning to remove your legs."

## V. STATEMENT OF PLAINTIFF'S CLAIMS

## COUNT ONE

### STATEMENT OF PLAINTIFF'S ADA/ADAAA - DISPARATE TREATMENT CLAIM – TERMINATION

41. In 2022, Wyatt was diagnosed with uterine fibroids. Uterine fibroids are muscle tumors of the uterus.

42. Wyatt's disability substantially limits her major life activities of lifting, standing, and walking.

43. Uterine fibroids cause Wyatt severe pain that is worsened by stress and

strenuous activity.

44. Wyatt requested reasonable accommodations. The accommodation request consisted of: day shift only, being restricted from lifting, pushing, pulling, or dragging more than 50lbs. These accommodations would alleviate pelvic pain from her uterine fibroids.

45. On January 16, 2025, Wyatt received a call from Oakley telling her she was being fired. Oakley told Wyatt that her leave had become "indefinite" and Austal "could no longer accommodate" her. Additionally, Oakley told Wyatt she was being fired for the alleged safety violation and write-up from January 13, 2025.

46. Shortly after the call with Oakley ended, Wyatt received two separate letters via email. One letter stated, "Unfortunately, we therefore have no reasonable option but to administratively separate your employment effective the date of this letter. The second letter, states that on January 13, 2025, "you were observed violating Austal's safety protocols by placing your legs inside an operational piece of machinery." "After this serious safety violation, you were given a verbal warning to remove your legs."

47. Defendant subjected Plaintiff to adverse treatment based on her disability by terminating her employment when she informed Austal of her disability and requested reasonable accommodations.

48. Plaintiff had a disability.

49. Plaintiff was a qualified individual.

50. Plaintiff has been discriminated against in violation of the ADA/ADAA because of her disability and/or perceived disability by Defendant.

51. Defendant terminated Plaintiff because she has a disability.

52. Defendant acted with malicious intent and/or reckless disregard for Plaintiff's federally protected rights.

53. Defendant's illegal discriminatory, harassing and adverse actions injured Plaintiff.

54. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for back pay, front pay, compensatory damages, punitive damages, attorney's fees, injunctive relief and declaratory judgment is her only means of securing adequate relief.

55. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a. Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of

the Plaintiff as secured by the ADA/ADAAA;

b. Grant Plaintiff a permanent injunction enjoining Defendant, its Agents Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating the ADA/ADAAA;

c. Grant Plaintiff an Order requiring Defendant's to make her whole by granting appropriate declaratory relief, punitive damages, compensatory damages (including damages for mental anguish), interest, attorney fees, expenses, costs, and;

d. Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

**COUNT TWO**
**PLAINTIFF'S CLAIMS OF RETALAITION**
**PURSUANT TO ADA/ADAAA.**

56. When Wyatt was moved to day shift, she was assigned to work "the web and automated steel panel line." Her new supervisor on this line was Burks.

57. Wyatt's first day on day shift was November 4, 2024. Upon arrival to her new line she was provided with equipment that exceeded her 50 pound weight-restriction accommodation by approximately 40 pounds.

58. Wyatt called Oakley to inform her that Burks refused to accommodate her.

59. Burns an Austal HR Employee, gave Wyatt a letter dated October 28, 2024, stating Austal approved her accommodations and she would in turn be accommodated. Burns requested that Wyatt affirm the contents of this letter by signing it. Wyatt did not sign the letter because she had not been accommodated for her weight-related accommodations.

60. On November 5, 2024, during her work shift, for a second time, Wyatt told Burks of her accommodations and that she was not being accommodated. However, Burks refused to accommodate Wyatt. After her shift ended, she Wyatt sent written complaints to Austal's Human Resources Department for Burk's failure to accommodate her medical restrictions.

61. On November 14, 2024, Burks damaged a piece of equipment and attempted to blame Wyatt. Burks threatened to issue Wyatt a write-up.

62. On November 20, 2024, Wyatt took leave that was approved by Austal. Again, Burks threatened to write-up Wyatt.

63. Wyatt complained in writing to HR about both of Burks' threats. Austal gave no response to Wyatt concerning these complaints.

64. On December 10, 2024, Burns called Wyatt into the HR office. Burns gave Wyatt a letter identical to the one she was given on November 4, 2024. Burns demanded that Wyatt sign the letter. Wyatt refused to sign the letter in protest since she was not being properly accommodated by Austal. Oakley — present via Zoom

— told Wyatt if she refused to sign the letter stating Austal was providing her proper accommodations, she would be 1) be fired immediately; 2) be escorted from Austal property; and 3) security was on its way to escort her off the premises. Convinced she had no other option, Wyatt signed the letter and added "Under Protest, 8:47 A.M. 12/10/24."

65. On January 13, 2025, around 1:00 p.m., Wyatt was written up by Burks. The write-up alleged that Wyatt placed her legs twice inside of an operational piece of machinery, the "panel-line." Wyatt emphatically denied that she improperly placed her legs into the machines. Wyatt called Staten, HR Representative, over to witness her write-up.

66. Wyatt received no written response. When arriving at work for her shift at 5:30 a.m., Wyatt was stopped by Tanner, told they were "going to have a meeting." Tanner instructed Wyatt to wait in the break room before the meeting took place. Wyatt would spend the next 6 hours waiting for someone from Austal to bring her into a meeting.

67. On January 14, 2025, around 11:00 a.m. Oakley and Jewett enter the break room and tell Wyatt that she was being placed on leave until Austal could find somewhere to put her.

68. On January 16, 2025, Wyatt received a call from Oakley telling her she was being fired. Oakley told Wyatt that her leave had become "indefinite" and

Austal "could no longer accommodate" her. Additionally, Oakley told Wyatt she was being fired for the alleged safety violation and write-up from January 13, 2025.

69. Shortly after the call with Oakley ended, Wyatt received two separate letters via email. One letter stated, "Unfortunately, we have no reasonable option but to administratively separate your employment effective the date of this letter. The second letter, states that on January 13, 2025, "you were observed violating Austal's safety protocols by placing your legs inside an operational piece of machinery." "After this serious safety violation, you were given a verbal warning to remove your legs."

70. Plaintiff engaged in a protected activity.

71. Plaintiff complained three times that she was not receiving her accommodations as granted by Austal.

72. Defendant took an adverse employment action against Plaintiff by firing her after she complained internally about not receiving her accommodations.

73. Plaintiff has been discriminated and retaliated against in violation of the ADA/ADAAA.

74. Defendant acted with malicious intent and/or reckless disregard for Plaintiff's federally protected rights.

75. Defendant's illegal, discriminatory, harassing and adverse actions injured Plaintiff.

76. Defendant has a habit and/or practice of discriminating against employees that engage in protected activity.

77. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a. Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by the ADA/ADAAA;

b. Grant Plaintiff a permanent injunction enjoining Defendant, its Agents Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating the ADA/ADAAA;

c. Grant Plaintiff an Order requiring Defendant's to make her whole by granting appropriate declaratory relief, back pay, front pay, punitive damages, compensatory damages (including damages for mental anguish), interest, attorney fees, expenses, costs, and;

d. Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

**COUNT THREE**
**PLAINTIFF'S FAILURE TO PROVIDE A REASONABLE ACCOMMODATION CLAIM**
**PURSUANT TO THE ADA AND ADAAA**

78. On October 8th and 10th 2024, per advice of her physician, Wyatt requested reasonable accommodations from Austal. The accommodation request consisted of: day shift only, being restricted from lifting, pushing, pulling, or dragging more than 50 pounds. These accommodations would alleviate pelvic pain from her uterine fibroids.

79. Austal directed Wyatt to submit her request to UNUM – Austal's insurance carrier.

80. On October 25, 2024, Wyatt received a letter from UNUM, stating that Austal approved her day shift only accommodation.

81. On October 28, 2024, Wyatt received a call from Austal HR Business Partner, Oakley, informing her that all of Wyatt's requested accommodations were approved by Austal.

82. When Wyatt was moved to day shift, she was assigned to work "the web and automated steel panel line." Her new supervisor on this line was Burks.

83. Wyatt's first day on day shift was November 4, 2024. Upon arrival to her new line she was provided with equipment that exceeded her 50 pound weight-related accommodation by approximately 40 pounds.

84. Wyatt called Oakley to inform her that Burks refused to accommodate her.

85. Additionally, Wyatt asked Burks if she could perform her work on sawhorse stands. Burks denied her request.

86. A few hours later, on November 4, 2024, Burns, an Austal HR Employee, gave Wyatt a letter dated October 28, 2024, stating Austal approved her accommodations and she would in turn be accommodated. Burns requested that Wyatt affirm the contents of this letter by signing it. Wyatt did not sign the letter because she had not been accommodated for her weight-related accommodations.

87. Wyatt was being forced to go against her weight restrictions and had to lift, push, pull, or drag equipment which weighed far heavier than 50 lbs.

88. At the end of her shift on November 4, 2024, Wyatt sent Oakley an email describing how she had not been accommodated throughout the day. Wyatt expressed her concern to Oakley that she was not being accommodated despite being approved for accommodations. Oakley never responded to this email.

89. On November 5, 2024, during her work shift, for a second time, Wyatt told Burks of her accommodations and that she was not being accommodated. However, Burks refused to accommodate Wyatt. After her shift ended, she sent written complaints to Austal's Human Resources Department for Burk's failure to accommodate her medical restrictions.

90. On November 6, 2024, for a third time, Burks failed to accommodate Wyatt. Again, at the end of her shift, Wyatt sent a written complaint to HR telling Austal she was not being accommodating. Wyatt never received any response from her written complaints of November 5 - 6, 2024.

91. On November 21, 2024, Wyatt called UNUM to report that she was not being accommodated.

92. On December 10, 2024, Burns called Wyatt into the HR office. Burns gave Wyatt a letter identical to the one she was given on November 4, 2024. Burns demanded that Wyatt sign the letter. Wyatt refused to sign the letter in protest since she was not being properly accommodated by Austal. Oakley — present via Zoom — told Wyatt if she refused to sign the letter stating Austal was providing her proper accommodations, she would be 1) be fired immediately; 2) be escorted from Austal property; and 3) security was on its way to escort her off the premises. Convinced she had no other option, Wyatt signed the letter and added "Under Protest, 8:47 A.M. 12/10/24."

93. On December 11, 2024, Burks, along with Soto, approached Wyatt saying he was not aware that Wyatt had accommodations and he would accommodate her. However, even after this statement by Soto, Wyatt was forced to push, pull, drag, or lift equipment that was well beyond the 50lb restriction from her medical provider.

94. Plaintiff has a disability.

95. Plaintiff is a qualified individual pursuant to the ADA/ADAAA.

96. Defendant knew of Plaintiff's disability.

97. Plaintiff requested a reasonable accommodation by way of day shift only, being restricted from lifting, pushing, pulling, or dragging more than 50lbs.

98. This would have allowed Plaintiff to perform essential functions of the job.

99. Defendant denied Plaintiff the opportunity to lift, push, pull, or drag less than 50 pounds while performing the essential functions of the job.

100. Defendant subjected Plaintiff to adverse treatment, failed to accommodate Plaintiff, perceived Plaintiff to be disabled, harassed Plaintiff, unjustly disciplined Plaintiff, denied Plaintiff work, retaliated against Plaintiff, and subjected Plaintiff to discriminatory and adverse terms and conditions of her employment in violation of the ADA/ADAAA.

101. Plaintiff has been discriminated against and was denied an accommodation in violation of the ADA/ADAAA.

102. Defendant acted with malicious intent and/or reckless disregard for Plaintiff's federally protected rights.

103. Defendant's illegal discriminatory, harassing, and adverse actions injured Plaintiff.

104. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for back pay, front pay, compensatory damages, punitive damages, attorney's fees, injunctive relief and declaratory, judgment is her only means of securing adequate relief.

105. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein unless enjoined by the Court.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a. Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by ADA and ADAAA;

b. Grant Plaintiff a permanent injunction enjoining Defendant, its Agents, Successors, Employees, Attorneys, and those acting in concert with Defendant or at the Defendant's request from violating ADA and ADAAA;

c. Grant Plaintiff an Order requiring the Defendant to make her whole by granting appropriate declaratory relief, compensatory damages (including damages for mental anguish), punitive damages, interests, attorney fees, expenses, costs; and

d. Plaintiff prays for such other, further, different or additional relief and

benefits as justice may require.

**PLAINTIFF HEREBY REQUESTS TRIAL BY STRUCK JURY**

*Nicole D. Edwards*
State Bar ID No: ASB-4832-B19D
*Blake C. Edwards*
State Bar ID No: ASB-5200-T60B
*Attorneys for Plaintiff*
EDWARDS & EDWARDS
ATTORNEYS AND MEDIATORS
3603 Pine Lane, Suite B
Bessemer, AL 35022
Tel: (205) 549-1379
Fax: (205) 719 - 4033

**PLAINTIFF'S ADDRESS:**
Ms. Latoria Wyatt
Edwards & Edwards Attorneys and Mediators, PLLC
3603 Pine Lane, Suite B
Bessemer, Alabama 35022

**PLEASE SERVE DEFENDANT AT THE FOLLOWING ADDRESS:**
Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104